IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CATHERINE TRAPANI AND<br>CHRISTOPHER TRAPANI, H/W, | CIVIL ACTION NO. |
| Plaintiffs | JURY TRIAL DEMANDED |
| v. | |
| NATIONAL RAILROAD PASSENGER<br>CORPORATION a/k/a AMTRAK, | |
| Defendants | |

## COMPLAINT

**COME NOW** the Plaintiffs, Catherine Trapani and Christopher Trapani, by and through their attorneys, Earp Cohn P.C., and allege as follows:

### INTRODUCTION

1. On May 12, 2015, Amtrak Regional Rail Train 188 was traveling northbound at approximately 106 mph as it approached Frankford Junction in Philadelphia, Pennsylvania, a few miles northeast of 30th Street Station.

2. The speed of Train 188 was shockingly and recklessly excessive given the nature of the considerable curvature of the tracks in that location.

3. As a result of Defendant's reckless monitoring, control, and operation of Train 188, all seven passenger cars and the locomotive of Train 188 derailed, at high speed, causing the first passenger car to be mangled, the next to flip upside down, and several others to be thrown onto their sides.

4. Upon information and belief, there were approximately 238 passengers and 5 crew members on board Train 188 at the time of the crash.

5.      Eight passengers died in the tragedy and over 200 passengers reported injuries, 10 of whom, including Plaintiff Catherine Trapani, were critically injured.

6.      Amtrak has been on notice of this dangerous turn in the location of Frankford Junction for decades.

7.      In fact, Frankford Junction was the sight of an earlier disaster on September 6, 1943, where a Pennsylvania Railroad Congressional Limited train derailed, killing 79 people and injuring 117 others.

8.      For many years before the disaster of May 12, 2015, Defendants knew of and understood the degree of the subject turn, and knew of, and understood, the importance of carefully monitoring and restraining train speed to safely negotiate the curve.

9.      Had proper precautions and safety measures been implemented by Amtrak, this tragedy would have been prevented.

## JURISDICTION and VENUE

10.     This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds the jurisdictional threshold and diversity of citizenship exists.

11.     Venue is proper in the United States District Court for the Eastern District of Pennsylvania under 28 U.S.C. §1391(b) because the causes of action upon which the Complaint is based arose in Philadelphia County, Pennsylvania which is within the Eastern District of Pennsylvania, and Defendant is subject to personal jurisdiction in this District.

## PARTIES

12.    Plaintiff, Catherine Trapani, an adult citizen of the United States of America and the State of New Jersey, residing at the above-captioned address, was a passenger on Train 188 at the time of the derailment and sustained injuries as a result of the careless, reckless, and outrageous conduct of the Defendant.

13.    Plaintiff, Christopher Trapani, an adult citizen of the United States of America and State of New Jersey, residing at the above-captioned address, is the husband of Plaintiff, Catherine Trapani, and was not on board Train 188 at the time of the derailment.

14.    Defendant, National Railroad Passenger Corporation a/k/a Amtrak ("Amtrak"), is a corporation organized and existing under the laws of the United States of America with its principal place of business located at 60 Massachusetts Avenue, Washington, D.C. 20002.

15.    At all times relevant hereto, Defendant has conducted, and continues to conduct, substantial, continuous, and systematic activities in the Commonwealth of Pennsylvania, and has purposely established significant contacts within Pennsylvania and within the Eastern District of Pennsylvania both before and after the May 12, 2015 disaster.

16.    The injuries and damages alleged in this lawsuit arise out of, and are related to, Defendant's contacts and activities in the Commonwealth of Pennsylvania.

17.    At all relevant times, Defendant Amtrak was acting individually and by and through its employees, servants, agents, workmen, and/or staff, including, but not limited to, the engineer of Train 188, Brian Bostian, all of whom were acting within the course and scope of their employment, agency, and/or authority for and on behalf of the Defendant.

## FACTUAL AVERMENTS

18. On May 12, 2015, Plaintiff, Catherine Trapani, was a passenger on board Train 188 that was owned, operated, maintained, and controlled by Defendant Amtrak.

19. Catherine Trapani boarded Train 188 at Washington, DC's Union Station, planning to travel to the Metropark Station in New Jersey.

20. Amtrak Train 188 departed from Washington, DC's Union Station at approximately 7:20 p.m.

21. Train 188 made stops at stations in New Carrollton, Maryland; Baltimore-Washington International Airport, Baltimore, Maryland; Wilmington, Delaware; and Philadelphia, Pennsylvania at 30th Street Station.

22. Train 188 left 30th Street Station shortly after 9:00 p.m. and was scheduled to make additional stops in Trenton, New Jersey; Metropark, New Jersey; and Newark, New Jersey before reaching its final destination at Penn Station in New York, New York.

23. Amtrak Train engineer Brandon Bostian had served as an engineer with Amtrak since December 2010 and was a Conductor with Amtrak for four previous years.

24. At all relevant times, Mr. Bostian was working within the course and scope of his employment with Amtrak.

25. When Mr. Bostian operated Train 188 out of Philadelphia, he caused or allowed the train to reach excessive, careless, and reckless speeds which resulted in Train 188 taking the sharp and dangerous curve at Frankford Junction in excess of two times the legal or authorized speed.

26. Amtrak's reckless actions resulted in the train violently leaving the tracks, crashing, and flipping over at a highly excessive speed. A photograph depicting the scene of the derailment is attached hereto as Exhibit "A."

27. Upon information and belief, prior to the disaster, signals and/or signs alerted or should have alerted the operator of Train 188 that he was approaching the sharp and dangerous curve ahead to warn him to reduce speed.

28. Upon information and belief, one minute and five seconds before the crash, the train was traveling at approximately 70 miles per hour.

29. Upon information and belief, forty-three seconds before the crash, the train was traveling at approximately 80 miles per hour.

30. Upon information and belief, thirty-one seconds before the crash, the train accelerated to approximately 90 miles per hour.

31. Upon information and belief, sixteen seconds before the crash, the train further accelerated to an excessive speed in excess of 100 miles per hour.

32. Upon information and belief, the operator of Train 188 failed to reduce the train's speed until he applied the emergency brake just seconds before the derailment and crash, which only slowed the train from approximately 106 mph to approximately 102 mph at the time of the crash.

33. The violent high-speed derailment resulted in not only the derailment of all of the passenger cars, but also in the engine detaching from the first car, the first car becoming mangled and detached from the second car, the second car lying upside down, and other cars overturned.

34. At all times prior to this accident, Defendant Amtrak knowingly failed to equip Train 188 and/or the northeast rail corridor where the disaster occurred with a Positive Train Control system (hereinafter "PTC").

35. In October of 2008, Congress enacted the Rail Safety Improvement Act of 2008 (RSIA), which requires passenger railroad to install a PTC system no later than the end of 2015.

36. The PTC systems mandated by Congress were designated specifically to prevent, among other things, over-speed derailment.

37. PTC is a global positioning system-based technology that provides real-time visual and audible information to train crew members about, among other things, the areas in which a train must be slowed or stopped and the speed limits at approaching curves and other reduced-speed locations.

38. PTC communicates with the train's onboard computer, allowing it to warn the train crew of the train's safe braking distance in curved or reduced-speed locations, and displays the same on screes inside the locomotive's cab.

39. If the engineer does not respond to the ample warnings and on-screen displays, the PTC system will automatically activate the brakes and safely stop the train.

40. At all times relevant hereto, PTC systems were affordable, available, feasible, and intended to improve safety.

41. Prior to the disaster, PTC systems are operational on various stretches of railroad throughout Massachusetts, Connecticut, New Jersey, Maryland, and Delaware.

42. Thus, Amtrak failed to use available and in-use safety technology for trains and passengers on the stretch of track which would have prevented this horrific incident.

43. The computer/alert system which was in the Amtrak Train 188 failed to properly alert the engineer of the need to reduce speeds, or was defective in that it allowed the operator(s) of the train to bypass and/or ignore the alarm signal.

44. Upon information and belief, Amtrak also uses an older system of speed enforcement system of speed enforcement, referred to as Automatic Train Control, which uses mechanical means to slow trains traveling at excessive speeds. Amtrak uses this system for trains traveling southbound in the area of this disaster, but failed and/or refused to utilize this safety system for trains traveling northbound, such as Train 188.

45. Thus, Defendant Amtrak failed to use available and in-use safety technology for trains and passengers which would have prevented this disaster.

46. The train-control system in place on the Train 188 failed to adequately stop or slow down the train.

47. Through its reckless operation on the tracks and inexcusable decision to not include a necessary safety system, Amtrak caused this horrific tragedy.

48. Amtrak, through its President and CEO, has admitted that it is responsible for this disaster.

49. The locomotive of Train 188 was manufactured and built by Siemens in 2014.

**INJURIES AND DAMAGES**

50. During the derailment, Plaintiff, Catherine Trapani, was violently thrown about inside the second passenger car, lost consciousness for a brief period, and became pinned inside the wreckage for approximately one hour to one and one-half hours.

51. A photograph depicting the pertinent portion of the scene following the derailment, showing the second passenger car at the right of the frame, is attached hereto as Exhibit "B."

52. During the period in which Plaintiff Catherine Trapani was pinned and trapped, she experienced difficulty breathing inside the dark, smoke- and detritus-filled wreckage, and experienced physical and emotional pain while hoping for rescue.

53. As a direct and proximate of the carelessness, negligence, gross negligence, recklessness, and other liability producing conduct of the Defendant, Plaintiff Catherine Trapani suffered serious and disabling injuries, including internal injuries, internal bleeding, concussion, head injury, broken bones, abrasions, lacerations, contusions, muscle tearing, damage to her liver, contusions to her lungs, post-concussive syndrome, mental and emotional pain and suffering, physical pain, suffering, and loss of life's pleasures, past, present, and future, loss or earnings and wages, and loss of earnings capacity past, present, and future; hospital, medical, and rehabilitation expenses, past, present, and future, including medical equipment, supplies and other medical care and treatment, other psychological, psychiatric and neurological injuries, the full extent of which is yet to be determined, and some or all of which may be permanent in nature.

    (a) As a direct and proximate result of the conduct of Defendant, Plaintiff Catherine Trapani has in the past required, continues to require, and may in the future require, medical treatment and care, and has in the past, continues to incur and may in the future incur, the cost of medicines, medical care, physical therapy, hospitalizations, treatment, future operations, testing, and rehabilitation in an attempt to alleviate and/or cure her condition.

(b) As a direct and proximate result of the conduct of Defendant, Plaintiff Catherine Trapani has in the past and continues to suffer pain, disfigurement, scarring, loss of independence, mental anguish, humiliation, embarrassment, fear, loss of wellbeing, inability to enjoy the normal pleasures of life, and restrictions on her ability to engage in normal activities and pleasures of life and other intangible losses.

(c) As a direct and proximate result of the conduct of Defendant, Plaintiff Catherine Trapani has been prevented, and may in the future be prevented, from performing her usual duties, activities, occupations, and avocations, and has suffered a loss of earnings and a loss of earning capacity.

## COUNT I

## NEGLIGENCE

54. All preceding paragraphs are incorporated herein by reference.

55. Train 188 was operated by Defendant Amtrak at the time of the deadly derailment.

56. Amtrak owed its passengers, including Catherine Trapani, the highest duty of care to ensure their safety during their travels.

57. Plaintiff and the other passengers on Train 188 trusted Amtrak with their lives as they rode as passengers on the train with no ability to control the train or prevent a derailment.

58. Amtrak controlled the train route, the tracks, the safety systems in place, and signals on the tracks.

59. Amtrak, by and through its employees and/or agents, caused the injuries and damages sustained by Plaintiffs and acted carelessly, negligently, grossly negligently, recklessly, and outrageously through the following actions and/or inactions:

(a) Operating Train 188 at over twice the legal or authorized speed limit;

(b) Operating Train 188 at 106 mph just before the derailment;

(c) Operating Train 188 at 102 mph at the time of the derailment;

(d) Failing to slow down as Train 188 approached the dangerous curve at or about Frankford Junction;

(e) Failing to adequately train the operator and crew on the train;

(f) Hiring an incompetent operator, engineer, and/or crew to operate the train;

(g) Failing to ensure the train was equipped with PTC or other speed limiting system;

(h) Failing to ensure the train was equipped with an advanced civil speed enforcement system;

(i) Failing to properly inspect the train in question;

(j) Failing to properly inspect the railroad tracks at Frankford Junction;

(k) Failing to properly maintain and/or repair the train in question;

(l) Failing to properly maintain and/or repair the railroad tracks/track system in question;

(m) Failing to take proper action in response to complaints about the railroad tracks in question;

(n) Permitting a train carrying hundreds of passengers to enter the sharp turn at Frankford Junction at speeds in excess of 100 mph, even though the speed limit was 50 mph;

(o) Failing to have properly trained personnel inspect the condition of the train's control system;

(p) Failing to have properly trained personnel inspect the condition of the railroad's train-control system;

(q) Failing to perform required inspections of the railroad tracks/track system in question;

(r) Failing to perform required inspections of the train in question;

(s) Failing to install a proper train-control speed system;

(t) Violating governmental statutes, regulations, and requirements with respect to the train and train system in question;

(u) Failing to properly inspect, maintain, and repair the signal system associated with the train and train tracks in question;

(v) Failure to comply with the Defendant's own safety, operating, and other rules, procedures, and regulations;

(w) Allowing improperly trained and unqualified personnel to operate the train in question;

(x) Failing to comply with the rules of the Northeast Operating Rules Advisory Committee (NORAC);

(y) Failing to use shatterproof glass for the windows of the train;

(z) Failing to comply with the Rail Safety Improvement Act (RSIA); and

(aa) Failing to comply with the Federal Locomotive Inspection Act.

60. Through the actions and inactions described above, Amtrak is responsible for the deaths of eight people and catastrophic injuries to others, including Plaintiff Catherine Trapani.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants for such damages as may be permitted pursuant to applicable law, including all compensatory and punitive damages, together with interest, costs, and attorney's fees.

### COUNT II – OUTRAGEOUS CONDUCT (PUNITIVE DAMAGES)

61. All preceding paragraphs are incorporated herein by reference.

62. Defendant, by and through its agents and employees, including, but not limited to, Engineer Brian Bostian, operated the subject train at a rate of speed in excess of 100 miles per hour prior to derailment.

63. Defendant, by and through its agents and employees, operated the subject train at a rate of speed twice the posted speed limit prior to derailment.

11

64. A passenger train should never be operated at a rate of speed twice the speed limit.

65. Operation of a passenger train at a rate of speed twice the speed limit is reckless and outrageous.

66. Defendant, Amtrak, blatantly ignored the safety and design recommendations of the National Transportation Safety Board regarding the use and implementation of the PTC system.

67. Defendant, Amtrak, knew that the dangerous condition, in conjunction with the lack of PTC system on its train, posed a very high risk of serious bodily injury and/or death to passengers.

68. Defendant, Amtrak, knowingly, willfully, and intentionally failed to take proper and recommended action to make its trains safe for passengers.

69. Defendant, Amtrak, failed to incorporate the NTSB safety recommendations and safety designs to save money.

70. Defendant, Amtrak, put profits over the safety of its passengers and exposed its passengers to unsafe conditions and hazards.

71. Defendant's conduct rises to the level of outrageous conduct by willfully and recklessly ignoring the known dangerous condition of Train 188 and Frankford Junction which caused death and injuries in the May 12, 2015 derailment disaster.

72. Defendant acted in a willful, wanton, and reckless disregard for the safety of its passengers.

73. This derailment was the result of conduct carried out by Amtrak with a conscious and flagrant indifference to the rights and safety of others.

74. This, and other misconduct, constituted outrageous, willful, and/or wanton misconduct, and manifested a reckless indifference to the rights of others to support an award of punitive damages.

**WHEREFORE**, Plaintiffs demand judgment against the Defendant for such damages as may be permitted pursuant to applicable law, including all compensatory and punitive damages, together with interest, costs, and attorney's fees.

### COUNT III – LOSS OF CONSORTIUM

75. All preceding paragraphs are incorporated herein by reference.

76. Plaintiff, Christopher Trapani, is and was at all relevant times the husband of Plaintiff, Catherine Trapani, and as such, is entitled to her society, companionship, and services.

77. By reason of the Defendant's carelessness, negligence, gross negligence, recklessness and outrageous conduct, Christopher Trapani has suffered the loss of consortium and has been deprived of his wife's love, companionship, comfort, affection, society, moral guidance, intellectual strength, and physical assistance, and the loss of the assistance and earnings of Plaintiff wife.

**WHEREFORE**, Plaintiffs demand judgment against the Defendant for such damages as may be permitted pursuant to applicable law, including all compensatory and punitive damages, together with interest, costs, and attorney's fees.

Dated: 7-22-15

*/s/ Carol S. Harding/*
CAROL SCHULER HARDING, ESQUIRE
csharding@earpcohn.com
CHARLES P. MONTGOMERY, ESQUIRE
cmontgomer@earpcohn.com

**EARP COHN P.C.**
123 South Broad Street
Suite 2170
Philadelphia, PA  19109-1022
(215) 963-9520
(215) 963-9620 (Fax)

Attorneys for Plaintiffs Catherine Trapani
and Christopher Trapani

## JURY DEMAND

Plaintiffs hereby demand trial by jury in accordance with the Federal Rules of Civil Procedure.

Dated: 7-22-15

*/s/ Carol S. Harding/*
CAROL SCHULER HARDING, ESQUIRE